UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

RAN ZHOU,

                                     Plaintiff,      **COMPLAINT**

            -against-

GFK MRI-SIMMONS, ANIKA AHMED,        Jury Trial Demanded

                             Defendants.

----------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

1.  Plaintiff, a former employee of defendant GFK MRI-Simmons ("MRI-Simmons"), a market research company, brings this action against defendants alleging disability discrimination in violation Americans with Disabilities Act of 1990 ("ADA"), the Rehabilitation Act of 1973; the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL").  Plaintiff also claims that defendants retaliated against her for taking leave under the Family Medical Leave Act of 1993 ("FMLA").  Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343, as this action asserts violations of federal anti-discrimination laws and the FMLA, and therefore raises federal questions regarding the deprivation of plaintiff's rights.

3.  Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide her New York State and New York City claims, which form

part of the same case and controversy as plaintiff's federal claims under Article III of the United

States Constitution.  In connection with plaintiff's City Human Rights Law claims, a copy of this

complaint was provided to the New York City Commission on Human Rights and the

Corporation Counsel of the City of New York, as required.

4.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391(b) and (c) because defendants are located in this District and the incident in question

occurred in this District.

## JURY TRIAL

5.  Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial.

## ADMINISTRATIVE REQUIREMENTS

6.  Plaintiff timely filed an administrative charge of discrimination with the New

York State Division of Human Rights which was dual filed with the Equal Employment

Opportunity Commission ("EEOC").

7.  The EEOC issued plaintiff a right to sue letter on November 11, 2022,

allowing her to bring suit within 90 days of his receipt of the letter.

## PARTIES

8.  Plaintiff is a resident of the State of New York, County of Queens.

9.  "MRI-Simmons, a joint venture co-owned by GFK, is the leading provider of

insights on the American consumer.  Its flagship consumer study, MRI-Simmons USA, provides

detailed insights on 50,000+ respondents each year in the continental US, uncovering their media

habits, brand usage, leisure activities, attitudes, and more."  www.gfk.com/mri-simmons.  The

company may be the recipient of federal funds, which would subject the company to the

Rehabilitation Act of 1973.

10.  At all relevant times, Anika Ahmed was the Director of Human Resources for MRI-Simmons.  Because Ahmed is a manager and supervisor, her discriminatory and other unlawful acts are imputed to MRI-Simmons.

## STATEMENT OF FACTS

11.  Plaintiff was previously employed by MRI-Simmons as a Technical Lead on the Digital Operations team.  She was hired in July 2019 and resigned in September 2022.

12.  Plaintiff was qualified for her position and always performed her duties and responsibilities in a more than satisfactory manner.  Plaintiff had been awarded bonuses, merit increases and a promotion during her tenure.  Plaintiff had no negative workplace issues before being discriminated against because of her disability and retaliated against for taking FMLA leave.

13.  Plaintiff's disability -- rheumatoid arthritis -- substantially impairs one or more of plaintiff's major life functions and plaintiff requires a reasonable accommodation if she suffers a flare-up.  In the event of a flare-up, plaintiff cannot do such things as walk, type, or hold utensils or a toothbrush.  During a flare-up, plaintiff also suffers from brain fog, extreme pain and cannot sleep.  The symptoms and financial repercussions from a flare-up exacerbate plaintiff's pre-existing depression and anxiety, and causes panic attacks.  Therefore, plaintiff is a qualified individual with disabilities under the anti-discrimination laws.

14.  At all relevant times, plaintiff was also "regarded as disabled" by defendants and had a record of the impairment at issue.

15.  Defendants were aware of plaintiff's disability at all relevant times

16.  In October 2021, plaintiff was promoted along with two of her co-workers. MRI-Simmons, however, refused to negotiate their salaries to a satisfactory level.  Their

manager and the Director of Human Resources reached an agreement that they would provide

plaintiff and her two co-workers $10,000 as an "award" instead, upon completion of two extra

goals finished and paid in quarters 2 and 4.

17.  In January 2022, plaintiff was diagnosed with rheumatoid arthritis.  Because

of the effects of the disease, plaintiff informed Human Resources and applied for leave under the

FMLA.  FMLA leave was approved on January 6, 2022.  Plaintiff was on FMLA leave from

January 12, 2022 to February 9, 2022, May 24, 2022 to June 22, 2022, and July 6, 2022 to July

13, 2022.

18.  On March 24, 2022, defendants presented plaintiff with a "MRI-Simmons

Special Retention Award" to sign.  The document stated in relevant part:

Date: March 24, 2022

Subject: MRI Simmons Special Retention Award

Dear Ran,

> Your expert knowledge, skills, and abilities are valuable in ensuring the success of MRI Simmons. We acknowledge the value of your commitment and would like to recognize your contribution to our success by offering a Special Retention Award in the form of two payments of $5,000.00
>
> The amount will be paid to you based on meeting the following criteria:

- You are considered an "active" employee on the date of payment.

- Your performance during this period must be satisfactory; your achievements will be reviewed by Human Resources and Senior Management prior to payment of award.

- You must maintain strict confidentiality, and not disclose or discuss this bonus with anyone outside your manager or HR business partner. This includes the terms, amounts, acknowledgement, or any details related to this award.

> The awards will be paid on the following dates and will be a gross amount, subject to all taxes and deductions:
>
> July 15, 2022 and December 30, 2022

4

Your knowledge, commitment, and engagement will help us continue our path to a successful year.

We are truly grateful for your continued support.

19.  The agreement also set forth plaintiff's two personal goals and plaintiff's self-imposed due dates for each goal - Goal 1 was due June 1, 2022 and Goal 2 was due December 20, 2022.  The agreement stated that the Goals "*should* be accomplished" by these dates.

20.  From May 24 to June 21, 2022, plaintiff's rheumatoid arthritis flared-up, along with pre-existing depression and anxiety brought on from the flare-up.  Plaintiff's depression and anxiety were treated by a psychiatrist and plaintiff was prescribed medication. Plaintiff informed her manager about the mental health issues.

21.  On June 28, 2022, plaintiff was notified by her manager that Anika Ahmed, the Director of Human Resources, decided that plaintiff had missed the "deadline" on June 1, 2022 to complete her quarter 2 goal, and that she was not eligible to receive her award payment of $5,000 on July 15, 2022.

22.  Plaintiff's manager and the senior vice president of her team asked Anika Ahmed to allow plaintiff to have an extension due to her disabilities.  Ahmed refused.  Ahmed never told plaintiff that her self-imposed due date of June 1, 2022 was a firm deadline.  The agreement that plaintiff signed stated that the goal will need to be completed and reviewed prior to the payment date, not prior to the self-imposed due date.  Awarding plaintiff her bonus and providing her with a reasonable accommodation would not have imposed an undue hardship on defendants.

23.  On June 30, 2022, plaintiff emailed Ahmed, who knew that plaintiff had been on FMLA leave for her disability and that plaintiff was disabled.  Plaintiff stated that she could complete the goal by June 30, 2022 as plaintiff had been working on it while on FMLA leave.

Ahmed stated that the deadline of June 1 had passed and that it was too late, even though quarter

2 was not over and the payment date listed in the agreement was July 15, 2022. Awarding

plaintiff her bonus and providing her with a reasonable accommodation would not have imposed

an undue hardship on defendants.

24. Plaintiff also had a conversation with Ahmed, but Ahmed still said it was too

late for plaintiff to receive the bonus.

25. The stress caused by defendants' misconduct caused plaintiff to suffer

another flare-up of her rheumatoid arthritis, which spread for the first time to her lumbar spine.

This flare-up, coupled with defendants' conduct, also exacerbated plaintiff's depression and

anxiety.

26. On July 11, 2022, plaintiff emailed Ahmed that she was contemplating legal

action for "disability discrimination and emotional/physical distress as the stress of this caused

my RA to spread to my lumbar spine." Still, the bonus was not paid to plaintiff. Instead, Ahmed

responded to plaintiff in an email stating in relevant part: "you did not successfully meet the

criteria relating to the Q2 Goal outlined in the agreement in order to receive the first payment."

Once again, awarding plaintiff her bonus and providing her with a reasonable accommodation

would not have imposed an undue hardship on defendants.

27. Defendants have taken the erroneous position that plaintiff is not entitled to

preferential treatment not provided to her co-workers, although plaintiff suffers from disabilities

and defendants did not suffer in any way by not receiving plaintiff's work by June 1, 2022.

Also, defendants have taken the position that the June 1, 2022 deadline was not "flexible."

However, the agreement that plaintiff signed did not state that the self-imposed due date was not

"flexible" or that the goal was required to be completed by that date.

28.  Plaintiff resigned on September 30, 2022.

29.  As a result of the defendants' actions, plaintiff suffered emotional distress, depression, anxiety and other mental anguish, physical manifestations of emotional distress, and financial loss.

## FIRST CLAIM

### (Disability Discrimination under the ADA)

### (Against Defendant MRI-Simmons)

30.  Plaintiff repeats the foregoing allegations.

31.  Defendant MRI-Simmons discriminated against plaintiff with respect to the terms and conditions of her employment on the basis of her disabilities, record of impairment, and what defendant regarded as disabilities, in violation of the ADA.  Because the individual who perpetrated the discrimination was a manager and supervisor, the Director of Human Resources, her conduct is imputed to the company.

32.  Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

33.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SECOND CLAIM

### (Disability Discrimination under the Rehabilitation Act)

### (Against Defendant MRI-Simmons)

34.  Plaintiff repeats the foregoing allegations.

35.  Defendant MRI-Simmons discriminated against plaintiff with respect to the terms and conditions of her employment on the basis of her disabilities, record of impairment,

and what defendant regarded as disabilities, in violation of the Rehabilitation Act, if the

defendant is the recipient of federal funds.  Because the individual who perpetrated the

discrimination was a manager and supervisor, the Director of Human Resources, her conduct is

imputed to the company.

36.  Defendant's conduct caused plaintiff to suffer various personal injuries,

including the injuries described herein.

37.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive

damages in an amount to be determined at trial.

### THIRD CLAIM

**(Disability Discrimination under the NYSHRL)**

**(Against all Defendants)**

38.  Plaintiff repeats the foregoing allegations.

39.  Defendants discriminated against plaintiff with respect to the terms and

conditions of her employment on the basis of her disabilities, record of impairment, and what

defendants regarded as disabilities, in violation of the NYSHRL.  Because the individual who

perpetrated the discrimination was a manager and supervisor, the Director of Human Resources,

her conduct is imputed to the company.

40.  The individual defendant, the Director of Human Resources, Anika Ahmed,

is individually liable for her own misconduct and/or for aiding and abetting discrimination.

41.  Defendants' conduct caused plaintiff to suffer various personal injuries,

including the injuries described herein.

42.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive

damages in an amount to be determined at trial.

## FOURTH CLAIM

### (Disability Discrimination under the NYCHRL)

### (Against all Defendants)

43.  Plaintiff repeats the foregoing allegations.

44.  Defendants discriminated against plaintiff with respect to the terms and conditions of her employment on the basis of her disabilities, record of impairment, and what defendants regarded as disabilities, in violation of the NYCHRL.  Because the individual who perpetrated the discrimination was a manager and supervisor, the Director of Human Resources, her conduct is imputed to the company.

45.  The individual defendant, the Director of Human Resources, Anika Ahmed, is individually liable for her own misconduct and/or for aiding and abetting discrimination.

46.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

47.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FIFTH CLAIM

### (Retaliation for Exercising Rights Under the FMLA)

### (Against all Defendants)

48.  Plaintiff repeats the foregoing allegations.

49.  An employer is prohibited from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right.  An employer is prohibited from discriminating or retaliating against an employee for having exercised or attempted to exercise any FMLA right.  An employer is prohibited from discharging or in any other way

discriminating against any employee for opposing or complaining about any unlawful practice under the FMLA.

50.  Defendants retaliated against plaintiff with respect to the terms and conditions of her employment on the basis of her FMLA leave.  Because the individual who perpetrated the discrimination was a manager and supervisor, the Director of Human Resources, her conduct is imputed to the company.

51.  The individual defendant, the Director of Human Resources, Anika Ahmed, is individually liable for her own misconduct in retaliating against plaintiff for taking FMLA leave.

52.  Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

53.  As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiff requests the following relief jointly and severally against the defendants:

a.      Compensatory damages in an amount to be determined by a jury;

b.      Punitive damages in an amount to be determined by a jury;

c.      Attorney's fees and costs;

d.      Prejudgment and other lawful interest;

e.      Such other and further relief as the Court may deem just and proper.

DATED:  November 23, 2022

/s Richard Cardinale

_____

RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite # 1507
Brooklyn, New York 11242
(718) 624-9391(w)
(917) 685-2853 (c)
richcardinale@gmail.com
website: richardcardinalelaw.com